Argued April 6, reversed with instructions April 19, 1967

# GROFF, *Respondent, v.* STATE INDUSTRIAL ACCIDENT COMMISSION, *Appellant.*

426 P. 2d 738

██

*Donald J. Howe,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General and Wallace Carpenter, Assistant Attorney General, Salem.

*Phil H. Ringle, Jr.,* Oregon City, argued the cause for respondent. With him on the brief were Misko, Njust & Ringle, Oregon City.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, LUSK and FORT, Justices.

FORT, J. (Pro Tempore).

This case is brought by the plaintiff for alleged aggravation of an injury to her back and legs for which she had previously received a final award of "* * * 20% permanent partial disability * * * on account of her unscheduled injuries." The defendant denied the claimed aggravation. The case was duly tried and submitted to a jury which returned into a court a verdict for the defendant Commission.

Thereafter the plaintiff filed a motion for a new trial on the ground of "Misconduct of the jury or prevailing party * * *" under ORS 17.610(2). The court allowed the motion and the defendant has appealed from that order.

In order to determine the correctness of the ruling it is necessary to set forth portions of the evidence sequentially. The problem arises out of the calling and examination of a witness. Miss Kissling, the witness in question, was called by the defendant during its case in chief.

During the examination of the plaintiff during her case in chief, she was asked several questions, both on cross examination and on redirect examination, concerning her acquaintance with Miss Kissling, all without any objection whatever. The record in this connection first shows the following questions on cross examination by defendant's attorney and her answers:

"Q Do you know Virginia Kisling, a caseworker?

\*　\*　\*　\*　\*

"A I do know her.

"Q And she has come and talked to you, has she?

"A Yes.

"Q Was the subject of your conversation your ability to take care of the child?

"A No.

"Q You never talked about that?

"A No.

"Q Did you ever talk to her about your physical complaints?

"A No.

"Q This you are certain of?

"A Yes."

Next on redirect examination by her own attorney she testified:

"Q Now, with regard to this Miss Kisling that

you have been asked about, what is your connection with her or her connection with you?

"A She used to be the kid's—my boy's caseworker in Welfare.

"Q Is it his child that you care for in the home?
"A Yes.

"Q She has visited you or the child or both of you or—
"A Well, she more or less visited the child's parents, because they was there at the time when she was there.

"Q When was the last contact you have had with Miss Kisling to your best recollection?
"A I just really couldn't say; it's been quite a while.

"Q More than a year or less than—
"A Yes; right at a year anyway, if not more.

"Q A year or more?
"A Yes.

"Q How many times has she been to your home with regards to your grandchild?
"A Well, she's never come to the home to see her.

"Q Never came to your home to see her?
"A Never came there to see the child.

"Q Where is it?
"A She's come to see the parents; they have made arrangements to come up there to see them instead of going to the mother's parents to see—

"Q Where did your association come in— Did you go someplace to see Miss Kisling?
"A No. Miss Kisling would always come to our home, because my son would come there, make arrangements for her to come to our place to see her.

"Q They just all met at your home?
"A Yes.

"Q How many times do you think altogether you saw Miss Kisling?

"A Oh, maybe five, six, or maybe more, I just wouldn't swear to it for sure.

"Q Did that start shortly after the three-year-old child was born?

"A Yes.

"Q She hasn't been there for a year or more?

"A No."

\* \* \* \* \*

During defendant's case in chief it called as a witness in its behalf the aforementioned Miss Kissling, now because of recent marriage, named Virginia Janssen. The record, after identifying the name and address of the witness, shows the following:

"Q What is your occupation?

"A Welfare worker.

"Q Can you tell me whether or not you have seen and talked to the plaintiff in this case, Mrs. Zola Groff?

"A Your Honor, if it appears to the Court to be applicable, I must claim the privilege of communication described in Section 411.320, Oregon Revised Statute. The law deals with the confidentiality of—

"THE COURT: How did they get this information? If it is confidential, how did they get it?

"THE WITNESS: The—

"THE COURT: If you know. If you don't know, say so.

"THE WITNESS: I talked with one of the members of the State Industrial Accident—

"THE COURT: Why did you do that? If it's confidential, why do you come into the court and tell the Court it is confidential when you have given it to somebody else? You come in and parade this matter, make it seem like it is serious, to be con-

fidential, but you have given it to somebody else. They already have the information. Is that the way you proceed in your department?

"Go ahead.

"MR. HOWE: Your Honor—

"MR. RINGLE: Well, Your Honor, I raise an objection on this thing, and I have a matter for the Court.

"THE COURT: You may take the jury out."

\* \* \* \* \*

Thereafter out of the presence of the jury and, so far as relevant to the problem presented, the following took place:

"THE COURT: \* \* \* Now, what information have you given them?

\* \* \* \* \*

"THE WITNESS: \* \* \* They asked me about whether Mrs. Groff could work.

\* \* \* \* \*

"THE WITNESS: I said, well, I didn't know. I didn't know whether she could work or not.

\* \* \* \* \*

"THE WITNESS: I said she probably could work, *because when we were considering placing a small child in her home,* I asked her if she could care for this child, if she felt she was physically able." (Emphasis added.)

Plaintiff then objected on the ground it was a privileged communication. The court, after stating:

"I don't know anything in the statute that makes it privileged communication."

later ruled:

"I am going to keep this information out."

Plaintiff then moved for a mistrial. The court ruled:

"Well I am not going to grant a mistrial. I think this has done them more harm than good. I will deny your motion for a mistrial."

No error has been assigned as a result of this ruling.

The jury was then brought back, and the case proceeded. No further questions were asked of the witness, and she was excused. The case was shortly thereafter submitted to the jury, which returned into court a verdict in favor of the defendant Commission.

Following entry of judgment thereon plaintiff filed her motion for a new trial upon the grounds of misconduct of the prevailing party.

In ruling on the motion for a new trial the court stated:

"This matter is before the Court upon plaintiff's motion for new trial based upon the ground of misconduct of the prevailing party. During the trial of the cause the defendant, State Industrial Accident Commission, attempted to introduce [sic] into evidence records of the Public Welfare Commission which are specially declared to be privileged communications and are not admissible in evidence under ORS 411.320. This is not the first time that the Commission has attempted to introduce such evidence in this department of the Circuit Court. The attempt to introduce this evidence in the manner and form indicated by the affidavit attached to the motion for new trial was in the opinion of the Court extremely prejudicial to the rights of the plaintiff. This Court will not allow its processes to be used to further such illicit practices. The conduct of the defendant in attempting to introduce the evidence mentioned was in the opinion of the Court offensive to the very vitals of the integrity

of the judicial process, and to the very purity of the fountainhead of justice. The motion for new trial will therefore be allowed. Counsel for the plaintiff may prepare the necessary order."

The transcript reveals no attempt here "to introduce into evidence records of the Public Welfare Commission." No such exhibits were marked, identified or referred to in the evidence. The affidavit of plaintiff's counsel accompanying the motion for a new trial states only:

"* * * that said misconduct alleged is that the defendant by and through their attorney called as a witness one Virginia K. Janssen, a Public Welfare Worker knowing full well that said witness could not testify pursuant to ORS 411.320; * * *."

ORS 411.320 provides:

"*For the protection of applicants for and recipients of public assistance,* the State Public Welfare Department and the county public welfare departments shall not disclose or use the contents of any records, files, papers or communications for purposes other than those directly connected with the administration of the public assistance laws of Oregon, and these records, files, papers and communications are considered confidential subject to the rules and regulations of the State Public Welfare Commission, except as otherwise provided in ORS 411.325 to 411.335. *In any judicial proceedings,* except proceedings directly connected with the administration of public assistance laws, *their contents are considered privileged communications.*" (Emphasis added.)

We have held that the privilege conferred thereby is not an absolute one, regardless of who may claim it.[1] Reese in The Oregon Lawyer's Trial Book, Evidentiary

---

[1] Chandler v. State, 230 Or 452, 370 P2d 626 (1962).

Privilege in Oregon, ch 3, § 3.47 (1967), referring to ORS 411.320 states:

> "Despite the provisions of the statute, when the fundamental rights of a person are in jeopardy, parts of welfare records may, in the discretion of the court, be used. * * *" (Citations omitted.)

Litigation is deeply involved in the search for truth. The method it has chosen for its discovery is that of reliable evidence in an adversary setting. The proper assertion of a privileged communication may be expected in any case to be an inhibiting limitation upon the discovery therein of the truth.[2] The legislature, however, has concluded that confidentiality of certain relationships is of greater importance than permitting the invasion thereof in the litigation process.

■■ Because of this inhibiting effect upon their basic function, the courts do not and cannot lightly permit its assertion.[3] The burden is on him who seeks its invocation to show that both the one asserting a privilege and the nature of the testimony offered are within the ambit of the statute according the privilege. No such showing was made here.

■ The regulation of the Welfare Department we think correctly reflects an awareness of this. It directs its staff members when called as a witness to:

> "* * * bring to the attention of the presiding judge the state statute relating to confidentiality of the records in question (ORS 411.300, 411.320, 418.130 or 411.325) and will ask the court's guidance in testifying under that statute. He will then answer questions at the direction of the judge." II,

---

[2] Coles v. Harsch, 129 Or 11, at 27, 276 P 248 (1929).

[3] Hurley, Privileged Communications in Oregon, 36 Or L Rev 132 at 160 (1956-57).

Oregon State Public Welfare Commission Staff Manual, ch VIII, § 2652.1 (rev ed 1962).

It is for the court, and only for the court, to say in any proceeding before it whether or not evidence is privileged. The statute in question extends its protection of privilege both to applicants for and recipients of public assistance. The evidence here did not establish that the plaintiff was a recipient of public assistance, nor so far as the record reveals, was she at any time the welfare worker was at her home. The plaintiff did not establish that she was for herself at any time an applicant for public assistance. She made no offer of proof thereof.

The testimony sought to be elicited thus appeared to come from contacts resulting from the Welfare Department's involvement in providing either care or guidance and control for plantiff's three-year-old grandchild. Neither her son nor her daughter-in-law lived with her, so far as can be determined from the record. Plaintiff herself testified that Miss Kissling never came to her home to see the child, only to see the child's parents, and that plaintiff's own association with her was limited to making "arrangements for her to come to our place" to meet the parents of the child, apparently as a common meeting place.

The record does not establish here that the plaintiff was within the ambit of the statute even to entitle her to a claim of privilege under ORS 411.320. It was her burden to do so. Furthermore, even assuming there was evidence that plaintiff was a recipient of public assistance, the record here is insufficient to determine what, if any, portions of the welfare caseworker's proffered testimony might have been admissible.

■ Finally it should be observed that the right to

claim this privilege, as with others, can be waived by the person entitled to claim it.[⑨] Here the plaintiff in her case in chief on redirect examination herself told of her relations with Miss Kissling. All of the evidence surrounding plaintiff's relationship with Miss Kissling offered during her case in chief was either brought out by plaintiff herself or came in without objection.

■ Here, however, we are not concerned with whether the court correctly excluded the testimony of Miss Kissling. The question here is whether there was misconduct of the prevailing party in calling Miss Kissling as a witness. We are of the opinion that there was not. The order granting the motion for a new trial is reversed with instructions to reinstate the judgment entered upon the verdict of the jury.

Reversed with instructions.

---

[⑨] Hurley, Privileged Communications in Oregon, 36 Or L Rev 132 at 160 (1956-57).