Argued September 17, affirmed November 18, reconsideration
denied December 11, 1974, petition for review denied January 21,
petition for writ of certiorari denied by U. S. Supreme Court
June 2, 1975

In the Matter of Arnold Roy Brown, a Child.

STATE ex rel JUVENILE DEPARTMENT FOR
LANE COUNTY, *Respondent, v.* BROWN,
*Appellant.*

528 P2d 569

*J. Fred Brandenfels,* Eugene, argued the cause and filed the brief for appellant.

*Timothy Wood,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and THORNTON and TANZER, Judges.

THORNTON, J.

This is an appeal from a final order and judgment entered in a juvenile court proceeding. The defendant, Arnold Ray Brown, a child, age 16, appeals from the order and finding entered by the Lane County Juvenile Court after an extended trial that the defendant had committed an assault by stabbing upon two other children.

Defendant contends that the trial court erred:

(1) in admitting testimony concerning defendant's "oral confession," because he was in custody and not advised of his constitutional rights; that even if not in custody defendant's "confession" was not voluntary;

(2) in failing to sustain defendant's objection to certain testimony elicited by the district attorney from defendant's psychiatrist, which testimony related to statements made by defendant to his psychiatrist concerning the assaults; and

(3) in denying defendant's motion for a new hearing based on errors of the court and newly discovered evidence, and a motion to reopen the hearing on the same grounds.

The two victims of the assault, Rose Welch, age 13, and Robert Welch, age 8, testified that they were walking along a secluded trail in dense undergrowth near the Willamette River in the northern part of Eugene at about 6 p.m., on June 6, 1973, when an unidentified young male stabbed them in the back and fled.

The essential facts are as follows:

In the process of checking out various investigative leads, the officers learned that defendant, among several others, had been in the vicinity about the time of the attack. The officers first interviewed defendant at his home on June 14. The following day the officers returned and asked defendant to accompany them to the river for the purpose of ascertaining where the defendant was at the time of the attack, and whom he may have observed near the scene. The officers testified that at this time they considered another boy the focal suspect. Defendant accompanied the officers voluntarily. He rode to the area in the back seat of the officers' unmarked police car. When they arrived at the river, the officers and the defendant discussed the assault. Officer DeForest testified that in the course of the conversation he said:

"* * * Arnold and I were talking about the person that would have stabbed the children. And I was telling Arnold to the effect that I can't quite understand the mood or the thinking of a fifteen, fourteen—fifteen or sixteen year old boy. And I asked other boys similar to this, you know, what would your thinking be? What would your reaction be. And I flat told Arnold it would be hard for me, if I was that age, or any age, to say that I did something like this. And I said to Arnold to the effect, 'It would be hard for you too, wouldn't it?'

"And he says, 'Yes.'

"Q [By Defense Counsel] And then on the sawdust pile did he say something to the effect, 'I did it'?

"At your suggestion that it's not hard to do?

"A It was kind of spontaneous. I said that: 'I did it. I did it. That's kind of hard for me. Be hard for you too?'

"He said, 'Yeah. I did it. Yes, that would be hard.'

"And it was just kind of a conversation back and forth.

"Q  And you also repeated the words to show him how easy it was to say, 'I did it'?

"A  I said the words. But I can't respond to your motivation for why I said it.

"Q  But you repeated the words? You said it and then Arnold simply repeated your words, is that correct?

"A  Yes, he did. Yes."

Immediately after the above conversation they returned to the police car. Officer DeForest then turned to defendant and asked: "Arnold, I want you to answer me honestly and sincerely if you can * * *. Did you stab the kids?" Defendant answered, "Yes, I did." The officers testified that on the basis of this admission they then took defendant into custody and brought him to the police station for further questioning. At trial defendant testified that in making the "I did it" statements, he was merely repeating the words the police asked him to say.

Defendant contends that his admission of guilt should not have been received because he was not first advised of his constitutional rights as required by *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966). We cannot agree.

Having reviewed the record we conclude first, that defendant was not in custody at the time of the above admissions of guilt. Therefore the requirements of *Miranda* and *State v. Neely,* 239 Or 487, 395 P2d 557, 398 P2d 482 (1965), do not apply. *See also, State v. Keiper,* 8 Or App 354, 493 P2d 750, Sup Ct *review denied* (1972). The officers questioned defendant in

the regular course of their investigation as they had a right and duty to do. Defendant was never restrained. He testified that he felt that he voluntarily accompanied the officers to the scene of the assault, and that he felt that he was free to go at any time until he was arrested. Secondly, on the question of the voluntariness of the defendant's "confession," the trial judge heard the testimony and concluded that the atmosphere had not been such as to make defendant's admission of guilt involuntary and coerced. The rule of *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968), applies. Nor do we find that the interrogator's questions, considered in context, were impermissibly suggestive. We are satisfied that defendant's admission of guilt was voluntarily made and not impermissibly tainted. *State v. Crossen,* 10 Or App 442, 499 P2d 1357, Sup Ct *review denied* (1972); *State v. Raiford,* 7 Or App 202, 206, 488 P2d 295, 490 P2d 206, Sup Ct *review denied* (1971).

Defendant's second assignment is that the trial court erred in failing to sustain defendant's objection to testimony elicited by the district attorney during his examination of defendant's psychiatrist, Dr. Bassford. The challenged testimony concerned allegedly privileged communications between defendant and his psychiatrist regarding the assaults.

To understand defendant's contention it should be explained that defendant's counsel had employed Dr. Bassford, a psychiatrist, through power of attorney from defendant's parents, to examine defendant for the purpose of testifying and possibly later treating defendant, and that Dr. Bassford was called as a witness by defendant in the remand hearing as well as at the trial. We do not find in the record trans-

mitted any transcript of the testimony given at the remand hearing. The court file shows, however, that at the conclusion of that hearing the court denied the state's motion to remand defendant to adult court for trial. Thereafter the court, sitting as a juvenile court judge, commenced the instant trial on the stabbing charges. Dr. Bassford again testified for the defense. Near the conclusion of the trial Dr. Bassford was called by the district attorney as a witness for the state. It was during this examination that the challenged testimony was elicited by the district attorney. The trial court ruled against defendant's claim of privilege, apparently on the basis that the instant proceeding was quasi-criminal in nature.

▆▆ Defendant, in addition to relying on the above section, also relies on the attorney-client privilege provided in ORS 44.040 (1)(b), citing *Brink et ux v. Multnomah County,* 224 Or 507, 356 P2d 536 (1960), and the patient-psychologist privilege provided in ORS 44.040 (1)(h). The attorney-client contention was not raised during the trial below. Therefore it will not be considered for the first time on appeal. *State v. Jorgensen,* 8 Or App 1, 492 P2d 312 (1971), Sup Ct *review denied* (1972). Defendant's contention that the patient-psychologist privilege applies is refuted by the record. ORS 44.040 (1)(h) limits this privilege to licensed psychologists. Dr. Bassford testified that he was a licensed physician and surgeon practicing psychiatry, not a licensed psychologist. *See, Triplett v. Bd. of Social Protection,* 19 Or App 408, 528 P2d 563 (1974).

The state argues that defendant waived any privilege he may have had by calling Dr. Bassford as his own witness.

■ A person who seeks to invoke a privilege as to a confidential communication has the burden to show both that the person asserting the privilege and the nature of the testimony are within the ambit of the statute according the privilege asserted. *Groff v. S.I.A.C.*, 246 Or 557, 426 P2d 738 (1967).

■ Under ORS 44.040 (1)(d)[1] "* * * information acquired in attending the patient, which was necessary to enable him [the physician] to prescribe or act for the patient * * *" is privileged and need not be divulged in civil proceedings, as distinguished from criminal proceedings. *State v. Betts,* 235 Or 127, 384 P2d 198 (1963).

Is a juvenile proceeding civil or criminal within the meaning of the physician-patient privilege granted under the above statute?

Turning to the Oregon cases dealing with this issue, in *State v. Jamison,* 251 Or 114, 444 P2d 15, 444 P2d 1005 (1968), our Supreme Court held that in a juvenile court proceeding to terminate the parental rights of an indigent mother of several illegitimate children, failure of the state to inform the mother of her right to court-appointed counsel and to appoint such counsel constituted a violation of her right to due process of law. In reaching its decision the court re-

---

[1] ORS 44.040 (1)(d) provides:

"(1) There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases:

"* * * * *

"(d) Subject to ORS 44.610 to 44.640, a regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action, suit or proceeding, as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient.

"* * * * *."

lied on the rationale of *In re Gault,* 387 US 1, 87 S Ct 1428, 18 L Ed 2d 527 (1967). The court stated that it recognized that the proceeding was not a "criminal matter," but said that it would follow the rule in criminal cases where waiver of the right to counsel must be a knowing waiver. The Oregon Supreme Court again addressed this problem in *State v. Turner,* 253 Or 235, 453 P2d 910 (1969), where a juvenile who was charged with having killed a clerk while attempting to rob a store, contended that she was entitled to a jury trial in juvenile court. The court held that a juvenile court proceeding was not a criminal proceeding within the meaning of the specific constitutional guaranty of trial by jury in criminal prosecutions.

Of more direct application is *State ex rel Juv. Dept. v. Martin,* 19 Or App 28, 526 P2d 647 (1974), in which this court held that proceedings in juvenile court for the termination of parental rights are civil proceedings within the privilege created by ORS 44.-040(1)(d). In arriving at this conclusion we said:

"* * * These [juvenile court] statutes would appear to warrant the conclusion that juvenile proceedings are, in fact, neither criminal nor civil but sui generis, and that they should be allowed to assume a form which best meets the unique purposes and needs of juvenile courts while at the same time affording the due process rights that have been held essential to juvenile proceedings in cases like *In Re Winship,* 397 US 358, 90 S Ct 1068, 25 L Ed 2d 368 (1970); *In Re Gault,* 387 US 1, 87 S Ct 1428, 18 L Ed 2d 527 (1967); *State v. Jamison,* supra [251 Or 114, 444 P2d 15, 444 P2d 1005 (1968)].

"* * * * *

"* * * At this time, then, we are compelled to conclude that the testimony of the physicians/psychiatrists in the hearing below was protected by

the privilege created by ORS 44.040 (1) (d) and was improperly admitted into evidence. \* \* \*" 19 Or App at 34, 37.

If as we held in *Martin* the privilege granted by ORS 44.040 (1)(d) applies in a proceeding in juvenile court to terminate parental rights, logic compels us to conclude that the privilege would apply to the proceeding at bar, unless waived. We believe, however, that the privilege was waived when defendant called his psychiatrist, Dr. Bassford, as a witness during both the remand hearing and the trial. While the record does not contain the psychiatrist's testimony at the remand hearing, it does contain his testimony at the trial. Dr. Bassford's testimony was based largely on statements elicited from defendant during a private psychiatric interview. These statements included disclosures by the defendant concerning the stabbing incident. Defendant also disclosed to his psychiatrist that he had admitted guilt to the police. As we have already noted, when defendant took the stand in his own behalf earlier in the trial he endeavored to explain his "I did it" statements by testifying that he was merely repeating the words that the police put in his mouth. In his testimony on behalf of defendant, Dr. Bassford dealt with the following: defendant's mental capacity (below normal IQ), mental abnormalities (possible schizoid personality), difficulty in understanding abstract concepts such as the *Miranda* rights, and whether defendant was capable of understanding the *Miranda* warnings. Dr. Bassford concluded that defendant was unable to understand his *Miranda* rights unless the officers, in addition to reading those rights from the card in the usual manner, would supplement and follow the same with an explanation of each right separately. Dr. Bassford's medi-

cal opinion, as shown by his testimony, was predicated almost entirely upon the information he elicited from defendant during the psychiatric interview.

■ When a patient calls his physician as a witness to prove a matter which the physician would only have learned in the course of his employment, this constitutes a waiver as to related privileged communications, including the physician's notes and records relating to the patient. *Maas v. Midway Chevrolet Co.,* 219 Minn 461, 18 NW2d 233, 158 ALR 215 (1945); *Demonbrun v. McHaffie,* 348 Mo 1120, 156 SW2d 923 (1941). McCormick, Evidence 194, 195, 219, 221, §§ 93, 103 (2d ed Cleary 1972).

We hold that the trial judge did not err in overruling defendant's claim of privilege.

■ Finally, we consider defendant's last assignment, namely, that the trial court erred in denying defendant's motion for a new hearing based upon errors of the court and newly discovered evidence, and overruling defendant's motion to reopen the hearing on the same grounds.

It appears from the record that on September 13, 1973, the court granted defendant leave to reopen his case. On September 21, the hearing was held before Judge Leavy and defendant introduced additional evidence and rested.

On September 26, 1973, defendant again moved the court for an order to reopen the case a second time. The court denied defendant's motion. According to the record the only evidence defendant hoped to introduce at this hearing was that a witness who had previously testified, and was at the scene of the crime with friends several hours after the assault,

would testify that one of the group informed him that he heard a person in the vicinity of the path where the assault took place; that the witness ran approximately 30 feet and shouted in a loud voice for the unknown and unseen person to come out; that the unknown and unseen person then ran away.

We are of the opinion that defendant's new evidence could have been discovered before the trial by exercise of due diligence. Further, this evidence, in our opinion from reading the record, would not have changed the result of the prior proceedings. We hold that the court did not abuse its discretion in denying defendant leave to reopen the case a second time on this account. ORS 17.610, 136.851; *State v. Williams,* 2 Or App 367, 468 P2d 909 (1970).

Affirmed.