Argued February 20, affirmed March 29, reconsideration denied May 26, petition for review denied June 15, 1976

STATE OF OREGON, *Respondent,*

*v.*

ROBERT LAWRENCE GAYLOR, *Appellant.*

(No. 75-194 and No. 75-195, CA 4736)

547 P2d 651

*Doyle L. Schiffman* and *Thomas Garrison,* Roseburg, argued the cause and filed the briefs for appellant.

*Kevin L. Mannix,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

THORNTON, J.

**THORNTON, J.**

Defendant was charged by separate indictments with three armed robberies in Roseburg on February 6, 1975: Casey's Restaurant, Richard's Food Center and United States National Bank. Each indictment charged robbery in the first degree.

The cases were consolidated for trial and the jury returned verdicts of guilty on the charges involving the Food Center and the Bank, but found defendant not guilty on the remaining charge.

Defendant appeals. He makes numerous assignments of error. Not all require discussion. Before considering defendant's contentions we will give a brief outline of the essential facts.

The evidence concerning the robberies was that defendant owned a pickup truck; that he drove another young man, later identified as Steven Couch, to the above mentioned locations, where Couch took a pistol, got out of the pickup and held up the establishments.

The first robbery occurred at 4:30 a.m.; the second about 2:30 p.m. For this reason the police were in possession of a good description of the robber and the getaway vehicle by the time of the third crime, the bank robbery, which occurred about 3:45 p.m. Two of the officers who were driving to the bank following the robbery chanced to observe two men in a pickup as they passed the police car driving in the opposite direction. One of the officers noticed that one occupant of the pickup was wearing eyeglasses.

Based on this information and other investigative leads obtained from witnesses to the robberies, the police were soon able to locate the pickup parked next to a dwelling in the Roseburg area. Defendant and Couch had apparently gone to this house following the last robbery. Police immediately converged on the house. After it was surrounded, two of the officers went to the front door. As they approached, Couch's face appeared at a window. One of the officers recog-

nized him and immediately shouted, "That's him. That's the man." Couch fled out a side door but was quickly apprehended.

Meanwhile the officers identified themselves to the two young men who had opened the door and asked for entry. Defendant, who was one of the two, invited the officers into the house. The officers then asked defendant if they could search his pickup and residence. Defendant agreed. He immediately took Officer Miner to a drawer in his bedroom and retrieved a bundle of currency taken in the bank holdup. He then took the officer to a drawer in another bedroom and showed him a .32 caliber pistol, similar to the gun used in the robberies. After this occurred, and after the officer learned from defendant that Couch did not habitually wear prescription-type eyeglasses, and saw that defendant did, he was then for the first time suspicious of defendant. He took defendant into a bedroom, closed the door, read defendant his *Miranda* rights[1] from a card, and then told defendant that he thought defendant had been driving when the pair left the bank, since, as already stated, the police had seen defendant driving the pickup along the street as the officers were answering the radio report concerning the bank robbery.

During the next five minutes defendant admitted he had been driving the getaway vehicle and described his involvement with Couch in the crime spree. Lt. Miner then placed defendant under arrest. The third young man who was in the house when the officers arrived was told to go home and await a possible call from the police.

■ We will now examine defendant's contentions. First of all, several of defendant's assignments of error claim that the trial judge committed reversible error in receiving the inculpatory statements defendant made to the police (and evidence seized), particularly

---

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

those statements made during the initial questioning at defendant's home.

We are unable to discover any basis for defendant's contention that he was deprived of any of his *Miranda* rights, or that any coercion, force, threats or promises were made or used as to defendant. At the time of the initial questioning defendant was not a suspect. It was not until sometime later that Lt. Miner realized that defendant might have been involved in driving the getaway car, at least following the third crime, namely, the bank robbery. There is ample evidence supporting the conclusion of the trial judge that defendant was not in custody when he gave his active cooperation and consent. Therefore no *Miranda* advice was required. *State v. Johnson,* 10 Or App 353, 499 P2d 348, Sup Ct *review denied* (1972); *State ex rel Juv. Dept. v. Brown,* 19 Or App 427, 528 P2d 569 (1974), Sup Ct *review denied, cert denied* 42 US 1003 (1975). *See also, State v. Brown,* 9 Or App 137, 495 P2d 304, Sup Ct *review denied* (1972); *State v. Keiper,* 8 Or App 354, 493 P2d 750, Sup Ct *review denied* (1972).

■ Where the trial court has made a finding of fact in a motion to suppress proceeding, and that finding is supported by evidence, the appellate court will not retry that issue. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968); *State v. Fisher,* 5 Or App 483, 484 P2d 864 (1971).

■ Again there is ample evidence to support the order of the trial judge denying defense motions to suppress and motions for judgment of acquittal and for directed verdict of acquittal. As to the last two motions, defendant's statements, which were independently corroborated, established that he participated in the robberies.

■■ Second, the trial judge's instruction on the defense of mental disease or defect was adequate and complete. It included the concept of diminished responsibility. It is axiomatic that the court need not give a

separate instruction where its instruction included the requested subject matter.

Third, as to defendant's point that the state should have presented certain alleged exculpatory evidence at trial, this is not the law. All that is required is that if the state is aware of exculpatory evidence, such evidence must be made available to the defendant in time for him to present it to the jury. *Hanson v. Cupp,* 5 Or App 312, 484 P2d 847 (1971). This was done here. Defendant's post-trial contention regarding undisclosed exculpatory evidence was not properly preserved below and is not therefore properly raised for the first time now. *State v. Jorgensen,* 8 Or App 1, 492 P2d 312 (1971), Sup Ct *review denied* (1972).

Fourth, we do not find any basis for reversal on account of the court's ordering that the state be allowed to have two psychiatrists examine defendant, nor in admitting the psychiatric testimony of Dr. Gardner. The trial judge acted within the scope of his judicial discretion in both cases. *State v. Gann,* 254 Or 549, 463 P2d 570 (1969).

Lastly, 'hindering prosecution' is not a lesser included offense of the crimes charged herein. Therefore no instruction was required. *State v. Washington,* 273 Or 829, 543 P2d 1058 (1975); *State v. Nye,* 273 Or 825, 543 P2d 1041 (1975).

Defendant's remaining assignments likewise cannot be sustained.

Affirmed.