*[1157]
 
 TANZER, J.
 

 Defendant was convicted by a jury of first degree kidnapping and murder.
 
 [1]
 
 He appeals, making several assignments of error.
 

 On Friday, April 2, 1976, at approximately noon, the victim left work at Osbum’s grocery store in Cannon Beach on her lunch break. She said she was going to drive somewhere and eat in her car, as was her custom. She was not seen alive again. Her car was found later that afternoon on a bluff overlooking the ocean. Her lunch was mostly eaten and her upper dentures were wrapped in tissue on the car seat. There were no signs of struggle.
 

 The following afternoon police found the victim’s body about a half-mile above a gravel pit on the Tolovana Main Line Road. She had been shot three times in the chest with a .22 caliber weapon. Her body was stuffed face down between two logs. Her outer clothing was in place, but her underclothes were found hanging in trees a short distance away. Apart from the bullet wounds, her body was unmarked. There was a trace of seminal fluid on the victim’s panties, but none elsewhere.
 

 On Friday defendant went clamming with friends at about 6 a.m. They stopped for breakfast afterwards and were together until about 10:30 a.m. Defendant drank several beers during this time. His companions declined an invitation to go drinking, and defendant was alone between 10:30 a.m. and 2:30 p.m., when he rejoined one of his friends.
 

 Defendant testified that during the intervening four hours, he went home to shower and change, and had several beers and a "couple of drinks” in the process. He then drove his blue pickup truck to the country club where his wife worked and exchanged it for her late model black Plymouth Fury. Defendant
 
 *[1158]
 
 stated that between 12:30 and 2:30 p.m. he drove his wife’s car to Elsie and then to the Elderberry Inn in an unsuccessful attempt to find his brother-in-law’s father. He continued to drink beer during this time and he said that when he rejoined his friend he was very intoxicated.
 

 Defendant’s friend testified that when they met again at 2:30 p.m. they went in defendant’s car to look at jeeps. He stated that, as he got into the car, he saw defendant’s .22 caliber pistol on the front seat. When he asked defendant what he had been doing, defendant replied that he had gone up to Elsie and "got a little off an older lady.”
 

 Two witnesses testified that, on Friday afternoon, while they were taking gravel from the Tolovana pit, defendant drove down the road in a black late model automobile. They stated that he asked them to move their truck so that he could pass and that he volunteered to them that he had been doing some target shooting in the woods above the gravel pit. Another witness reported seeing defendant driving a black automobile "quite fast” down the Tolovana road at about 1 p.m. on Friday afternoon.
 

 Two young women testified that on the following Saturday afternoon at about 1 p.m. they were hitchhiking southbound on the coast highway when they were picked up by defendant, driving a blue pickup truck. As they passed a turnout overlooking the ocean, where there was a great deal of activity, defendant reportedly said: "Right there is where this lady got shot and raped. * * * They think they’re going to catch me but they’re not going to catch me.” Police did not find the body until after 1:30 p.m. and did not discover the cause of the victim’s death until approximately 5:30 p.m. that afternoon.
 

 On Tuesday, April 6, at 10 a.m., police arrived at defendant’s house, armed with a warrant, to search for his .22 caliber pistol. Defendant’s wife admitted the
 
 *[1159]
 
 officers and led them to the top dresser drawer where the gun was kept. It was not there. Police then encountered defendant in the bathroom where he was shaving. They asked him whether he remembered seeing people at a gravel pit on the Tolovana road on Friday, April 2. When defendant answered affirmatively, he was arrested. Defendant’s pistol was then found stuffed between the mattress and boxspring of his bed. Ballistics tests showed that the bullets recovered from the victim’s body had been fired from defendant’s gun.
 

 I
 

 Defendant contends that the trial court erred in refusing to permit a defense psychiatrist to testify concerning a sedative interview with defendant. Defendant acknowledges that sedative interviews are inadmissible to prove the truth of statements made by the person interviewed or as the basis of an opinion as to the person’s veracity.
 
 State v. Harris,
 
 241 Or 224, 405 P2d 492 (1965);
 
 State v. Taggart,
 
 14 Or App 408, 420, 512 P2d 1359 (1973)
 
 rev den, cert den
 
 419 US 877 (1974). However, defendant contends that testimony concerning the interview should have been admitted to support the psychiatrist’s opinion testimony as to defendant’s mental state.
 

 Generally, the admission of evidence illustrative of the testimony of an expert is subject to the discretionary balancing by the trial court of the probative quality of such evidence against its tendency to confuse,
 
 State v. Tidyman,
 
 30 Or App 537, 550, 568 P2d 666
 
 rev pending
 
 (1977), and the rule is specifically applicable to psychiatric examinations such as this.
 
 State v. Harris, supra.
 
 In view of a jury’s natural tendency to give undue weight to statements of the defendant made under the influence of a sedative such as sodium amitol, commonly albeit erroneously known as a "truth serum,” we hold that the trial court acted within the range of its discretion in refusing to admit such evidence.
 

 
 *[1160]
 
 II
 

 At defendant’s request, the trial court properly instructed the jury on the effect of defendant’s voluntary intoxication. Defendant contends that the trial court erred in refusing to also give the following instruction:
 

 "The defendant does not have the burden of proving that his ability to form the required intent was impaired, since it is the state’s burden to prove beyond a reasonable doubt that defendant did have the required intent to commit the crime.”
 

 The trial court thoroughly instructed the jury as to the state’s burden of proving each element of the offense, including the element of intent.
 
 State v. Stockett,
 
 278 Or 637, 565 P2d 739 (1977). Such an instruction was adequate and the intoxication instruction was not misleading so as to require further clarification as to burden of proof.
 
 State v. Gaylor,
 
 24 Or App 933, 547 P2d 651
 
 rev den
 
 (1976).
 

 IH
 

 Defendant contends that the trial court erred in instructing the jury as follows:
 

 "Now, the state contends in this case that the defendant fled rapidly from the scene of the crime. In that regard, I instruct you that flight of a defendant after the commission of a crime is not sufficient, by itself, to establish his guilt, but it is a fact which, if proven, may be considered by you in deciding the question of defendant’s guilt. It is your duty to determine whether or not there was such flight, and if you find that there was, then it is your duty also to determine what the defendant’s purpose or motive was which prompted him so to act.
 

 "Evidence of flight, if you find that there is such evidence in this case, may be considered by you as an indication of defendant’s awareness of guilt or his guilty intent.”
 

 The basis of defendant’s objection, at trial and on appeal, is that there was no evidence of flight upon
 
 *[1161]
 
 which the instruction could be based. The only evidence which even arguably supports the giving of the instruction is testimony that on the day of the victim’s disappearance, defendant was seen driving "quite fast” down the Tolovana Main Line Road. There is no other evidence of attempt to avoid discovery or imminent apprehension, i.e., flight, if such evidence this be. On the contrary, the testimony of the other state’s witnesses who saw defendant on the Tolovana road suggests a contrary inference. Assuming that a flight instruction may be appropriate where the significance of evidence of flight is too obscure for lay jurors to understand, as
 
 State v. McCormick,
 
 280 Or 417, 571 P2d 499 (1977), seems to hold, it was error to give such an instruction where, as here, there was negligible evidence, if any, to support it.
 
 State v. Bonner,
 
 241 Or 404, 506 P2d 160 (1965);
 
 State v. Gibbons,
 
 1 Or App 374, 462 P2d 680 (1969).
 

 Although it was error to instruct the jury on flight, the instruction given in this case was so equivocal and insubstantial that the risk of prejudice was nil. The danger of giving an unsupported instruction is that the jury will infer judicial cognition of evidence which does not exist. Here, the jury was instructed that it must determine first whether any evidence of flight existed and then whether that evidence was believable, before attaching any significance to it. It is therefore unlikely that the instruction caused the jury to assume judicial cognition of evidence of flight where there was none.
 
 See, State v. Bonner, supra.
 
 Accordingly, we hold that the error was harmless.
 

 IV
 

 At trial, one of the officers who arrested defendant was permitted to testify over defense objection and with no cautionary instruction as follows:
 

 "I then stated [after advising defendant of his constitutional rights]: 'Having these rights in mind, do you wish to talk to us now?’ Mr. Nulph replied: 'I think I know what this is all about. I’d better talk to a lawyer.’ ”
 

 
 *[1162]
 
 Defendant contends that this entire statement should have been excluded because it informed the jury of defendant’s exercise of his constitutional rights.
 
 See, Miranda v. Arizona,
 
 384 US 436, 468, 86 S Ct 1602, 16 L Ed 2d 694 (1966);
 
 Griffin v. California,
 
 380 US 609, 85 S Ct 1229, 14 L Ed 2d 106 (1965);
 
 State v. Smallwood,
 
 277 Or 503, 561 P2d 600 (1977). Such evidence is generally inadmissible because the state should not benefit from the improper, although perhaps logical, inference that a defendant who invokes his right to counsel is guilty of the charged offense.
 
 State v. Smallwood,
 
 277 Or at 506. To permit the introduction of evidence from which such an inference is likely to be drawn would penalize one for exercising his rights.
 

 The rule is not absolute. In
 
 State v. Smallwood tine
 
 Supreme Court held that evidence of defendant’s exercise of his rights may be admissible where it has legitimate relevance and where the circumstances of the particular case tend to minimize the ordinary prejudicial impact of such evidence. Thus, where defendant admitted homicide and raised only an insanity defense, his exercise of his constitutional rights during interviews with the state psychiatrist was held admissible because it was relevant to show the depth and circumstances of the psychiatric examinations.
 

 Here, defendant denied the homicide but, if in fact he had committed it, he claimed the defenses of insanity and diminished responsibility. Thus, as in
 
 Smallwood,
 
 evidence of guilty knowledge was specifically relevant to negate a defense based on mental state but, unlike
 
 Smallwood,
 
 there was no admission of homicide to negate the prejudicial impact of the inference regarding
 
 mens rea.
 
 Thus, it was not admissible under the
 
 Smallwood
 
 exception.
 

 Nor does admissibility of part of the statement render the entirety admissible. The statement is composed of two distinct parts: the first sentence, "I think I know what this is all about,” and the second, "I’d
 
 *[1163]
 
 better talk to a lawyer.” Both parts are relevant because they tend to show the same thing: guilty knowledge. Both are volunteered and are not inadmissible as the product of improper questioning,
 
 State v. McCauley,
 
 8 Or App 571, 494 P2d 438
 
 rev den
 
 (1972). Both have a discrete internal sense which allows them to independently convey meaning without reference to the other. They are thus severable for the purpose of determining admissibility. The parts differ in legal effect only in that the latter is an invocation of the constitutional right to counsel. Thus, the first part is admissible, but the admission of the second part was error.
 

 The erroneous admission of evidence that a defendant invoked his right to counsel is not necessarily prejudicial.
 
 State v. Dodson,
 
 22 Or App 542, 540 P2d 380 (1975);
 
 State v. Hunt,
 
 15 Or App 76, 514 P2d 1363 (1973)
 
 rev den
 
 (1974). Both parts of the statement generate the same inference of guilty knowledge. The tendency of the jury would be to treat the statement as a whole. The inference of guilty knowledge derived from the first part is not significantly enlarged by the second part. Particularly in view of the substantial and persuasive evidence of defendant’s guilt, we believe beyond a reasonable doubt that the verdict was not significantly affected by the defendant’s statement concerning his need for a lawyer, and therefore the error in admitting defendant’s assertion of rights was, in itself, harmless.
 
 Chapman v. California,
 
 386 US 18, 87 S Ct 824, 17 L Ed 2d 705 (1967). Furthermore, while it is possible for two individually harmless errors to be prejudicial in their cumulative effect,
 
 State v. Bonner,
 
 supra, the two errors in this case are negligible both individually and together.
 

 V
 

 At the close of the state’s case, defendant moved for the equivalent of a judgment of acquittal on the charge of first degree kidnapping on the ground that there was no evidence upon which a jury could base a
 
 *[1164]
 
 conviction. He contends that the trial court erred in denying that motion. We agree.
 

 Under the criminal code, there are two degrees of kidnapping. The basic offense, a Class B felony, is kidnapping in the second degree and is defined in ORS 163.225:
 

 "(1) A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another’s personal liberty, and without consent or legal authority, he:
 

 "(a) Takes the person from one place to another; or
 

 "(b) Secretly confines the person in a place where he is not likely to be found.”
 

 The Class A felony of kidnapping in the first degree, an aggravated form of the offense, is defined in ORS 163.235, which provides:
 

 "(1) A person commits the crime of kidnapping in the first degree if he violates ORS 163.225 with any of the following purposes:
 

 * * * *
 

 "(d) To terrorize the victim or another person.”
 
 [2]
 

 Kidnapping in either degree requires that the taking or confinement be accomplished by force, threat or deception. ORS 163.215(1) provides:
 

 "As used in ORS 163.215 to 163.257, unless the context requires otherwise:
 

 "(1) 'Without consent’ means that the taking or confinement is accomplished by force, threat or deception, or, in the case of a person under 16 years of age or who is otherwise incapable of giving consent, that the taking or confinement is accomplished without the consent of his lawful custodian.”
 

 There was sufficient evidence that the abduction was accomplished by force. The fact that the victim’s body was recovered some distance away from her car supports an inference that she was taken from one
 
 *[1165]
 
 place to another. The fact that her partly eaten lunch and her dentures were left in her automobile indicates that she departed in haste. That fact, together with all of the evidence which suggests that she departed with defendant, a stranger, supports an inference that she left her automobile involuntarily.
 

 The next issue is whether there is evidence of intent to terrorize which, under this indictment, is necessary to elevate the crime from kidnapping in the second degree to first degree. To prove intent to terrorize, there must be evidence of a purpose to do more than that which is necessary to take or confine by force, threat or deception as described in ORS 163.215(1). Such a charge requires proof of an intent “to fill with terror,”
 
 see
 
 Webster’s Third New World Dictionary (1976). The term was included in the code to cover vengeful or sadistic abductions accompanied by taunting threats of torture, death or other severely frightening experience.
 
 See, State v. Swaggerty,
 
 15 Or App 343, 515 P2d 952 (1973).
 

 The state argues that evidence that the victim was ultimately murdered by defendant is evidence of intent to terrorize her. However, it does not follow that defendant abducted her or treated her during the period of abduction with more force than was necessary to accomplish the kidnapping. There was no proof of the vengeful or sadistic intent which is an element of first degree kidnapping. Evidence of intent to murder is not itself sufficient evidence of intent to terrorize because murder can be accomplished by surprise or otherwise without terror. There is slight evidence of nonconsensual sexual conduct, but it is not sufficient to allow an inference of intent to terrorize. Thus, the evidence is insufficient to support the conviction of kidnapping in the first degree.
 
 See, State v. Gehring,
 
 24 Or App 795, 547 P2d 167 (1976);
 
 State v. Swaggerty, supra.
 

 Because the evidence of forceful abduction necessarily found by the jury to be true is sufficient to prove
 
 *[1166]
 
 kidnapping in the second degree, however, defendant’s erroneous conviction for kidnapping does not require reversal. Rather, the judgment is modified to reflect conviction of the lesser kidnapping offense. Accordingly, the sentence on the kidnapping conviction is vacated and the cause is remanded for resentencing for the crime of kidnapping in the second degree.
 
 State v. Swaggerty, supra
 

 [3]
 

 Affirmed in part and remanded for resentencing.
 

 [1]
 

 ORS 163.235; ORS 163.115(1).
 

 [2]
 

 We do not consider the effect of subsection (c) "To cause physical injury to the victim,” because the indictment is brought under subsection (d) and the case was tried on that sole basis.
 

 [3]
 

 Defendant does not raise and we do not consider whether it was proper under the rule of
 
 State v. Woolard,
 
 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971), for defendant to be convicted and sentenced for both murder and kidnapping.
 
 See, State v. Webber,
 
 14 Or App 352, 513 P2d 496 (1973).